UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JONATHAN GOMEZ-LEYVA,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>Respondents. | Case No. 5:26-cv-06025-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On October 12, 2026, petitioner Jonathan Gomez-Leyva ("Petitioner"), represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1 at 1-32),[1] accompanied by seven supporting exhibits (Docket No. 1-2). The Petition alleges the following claims for habeas relief: (1) Petitioner's warrantless arrest is in violation of the Fourth Amendment; (2) Petitioner's detention violates his right to due process under the

[1] For the parties' pleadings and exhibits, the Court cites to the CM/ECF pagination at the top of each page.

Fifth Amendment; (3) Respondents' failure to provide a reasoned explanation violates Petitioner's due process rights under the Fifth Amendment; (4) Petitioner's detention violates his right to procedural due process under the Fifth Amendment; (5) Petitioner's detention violates his right to substantive due process under the Fifth Amendment; (6) Petitioner's detention violates the Administrative Procedures Act ("APA") – "Abuse of Discretion in Failing to Properly Apply Matter of Patel and Matter of Guerra"; (7) Petitioner's detention violates the APA – "Arbitrary and Capricious Bond Determination and Abuse of Discretion"; and (8) Petitioner's bond hearing was inadequate in violation of his right to procedural due process. (Docket No. 1 at 17-31). Petitioner seeks, *inter alia*, his immediate release from custody. (Id. at 3, 31).

On October 15, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 3), Respondents filed an Answer to the Petition ("Answer") (Docket No. 6), accompanied by one exhibit (Docket No. 6-1).

On October 19, 2026, Petitioner filed a Reply to the Answer ("Reply") (Docket No. 8), accompanied by one exhibit (Docket No. 8-1).

On October 20, 2026, the Court ordered Respondents to lodge a copy of the transcript from the September 24, 2026 bond hearing, as well as all exhibits submitted to the Immigration Judge in support of the bond hearing. (Docket No. 9).

On October 26, 2026, Respondents lodged a digital recording of the September 24, 2026 bond hearing and exhibits submitted to the Immigration Judge in support of the bond hearing. (Docket No. 10).[2]

On October 27, 2026, Respondents lodged the transcript of the September 24, 2026 bond hearing. (Docket No. 11).

---

[2] Since the relevant exhibits submitted to the Immigration Judge are attached to the Petition (see Docket No. 1 at 32; Docket No. 1-2 at 5-9, 29-181), the Court will reference those exhibits below.

On November 3, 2026, Petitioner filed an "Objection to Respondents' Untimely Filing and Unauthorized Supplemental Briefing" ("Objection"). (Docket No. 12).[3]

Thus, this matter is now ready for decision. For the reasons set forth herein, the Court finds that habeas relief is warranted and grants the Petition.

## II.

## BACKGROUND

Petitioner is a 27 year-old native and citizen of Mexico. (Petition at ¶¶ 3, 27). He has lived in the United States since he was about six years old. (Id. at ¶¶ 3, 27). He has lived at the same address in Anaheim, California for several years. (Id. at ¶ 27). He has no criminal record, has been a good student, and attends church. (Id.).

Petitioner applied for Deferred Action for Childhood Arrivals ("DACA") program along with an Employment Authorization Document with the United States Citizenship and Immigration Services. (Id. at ¶ 28; see Docket No. 1-2 at 3-4). Since initial DACA applications were no longer being processed at the time he applied, his DACA application was never finalized, and he did not receive DACA status. (Id. at ¶ 28).

On August 29, 2026, Petitioner was arrested during an enforcement operation by Immigration and Customs Enforcement ("ICE") targeting another individual. (Id.

---

[3] Petitioner objects to Respondents' October 26 and 27, 2026 filings on the grounds that the transcript of the September 24, 2026 bond hearing was filed late by one day (in noncompliance with the Court's October 20, 2026 Order, see Docket No. 9) and that the October 26, 2026 and October 27, 2026 filings contain unauthorized additional briefing. (Docket No. 12 at 2). The Objection is overruled. There is no indication that Respondents did not attempt to timely file the transcript of the September 24, 2026 bond hearing. On October 26, 2026 (the date the transcript was due), Respondents informed the Court and Petitioner that the transcript of the September 24, 2026 had been ordered but not yet received. (Docket No. 10 at 2). Moreover, Petitioner has not alleged any prejudice resulting from the one-day delay in receiving the transcript. With respect to the additional briefing in Respondents' filings (see Docket No. 10 at 2-3; Docket No. 11 at 2-3), Petitioner has not alleged any prejudice resulting from the additional briefing, and the additional briefing does not contain any new or novel information of which the Court is not already aware.

at ¶¶ 4, 29). He was arrested by immigration authorities without a warrant. (Id. at ¶ 29). The Department of Homeland Security ("DHS") issued an I-200 administrative arrest warrant subsequent to Petitioner's arrest, as noted on Petitioner's I-213 Form. (Id. at ¶ 29; see Docket No. 1-2 at 8).

Petitioner alleges that his Form I-213 contains several inconsistencies and therefore was not properly written by the officers. (Id. at ¶ 30). Petitioner was never an intended target for arrest and detention by ICE, as noted on his Form I-213: "[Petitioner] came to the attention of ICE during an investigation of an unrelated alien." (Id.; see Docket No. 1-2 at 7). There is no further explanation as to why Petitioner became the intended target. (Id. at ¶ 30). Since Petitioner had applied for DACA, ICE had all of his contact information. (Id.). The Form I-213 notes that Petitioner "resisted" arrest. (Id.; see Docket No. 1-2 at 8).

Petitioner's account of his arrest is very different from the details set forth in his Form I-213. (Id. at ¶ 30). Petitioner alleges he was dragged out of a car and body slammed onto the floor while asking to see a warrant. (Id. at ¶ 31). Petitioner further alleges that was willing to go with officers if proper documentation was shown. (Id.; see Docket No. 1-2 at 11).

Although the Form I-213 states that Petitioner "voluntarily agreed" to answer questions, Petitioner alleges that he had no other choice after the abuse he endured. (Id. at ¶ 32; see Docket No. 1-2 at 8). The Form I-213 did not accurately note Petitioner's information and used a blank cover of possibly another person to be completed since the arresting officer was not the same officer who completed the form, which calls into question the accuracy of the form. (Id. at ¶ 32). While Petitioner admitted that he came to the United States as a child, as noted in the Form I-213, the Form I-213 states that: "[Petitioner] entered the U.S. illegally by crossing the border on foot in search of work." (Id.; see Docket No. 1-2 at 9).

On or about September 10, 2026, Petitioner filed a Motion for Custody Redetermination pursuant to Section 1226(a) following the Maldonado-Bautista Judgment. (Id. at ¶ 33). The hearing took place on September 24, 2026; and an Immigration Judge ("IJ") denied Petitioner's request for bond on the basis of "Flight Risk," issuing a generic order. (Id.) The IJ noted on the denial only that, "[Petitioner] failed to meet his burden to establish that he is not a flight risk." (Id.; see Docket No. 6-1). Petitioner alleges that at his bond hearing, the IJ did not take into consideration any of Petitioner's positive evidence, including the fact that he has no criminal record, has lived at a fixed residential address for a number of years, is engaged to a United States citizen, has been living in the United States since he was a child, with DACA as a possible relief, has adjustment of status as a possible relief, has steady employment history, owns a business, files taxes, attends church, has a viable sponsor, and has community support. (Id. at ¶ 34; see Docket No. 1-2 at 29-181).

At the beginning of the hearing, the IJ admitted that there were many people present for Petitioner. (Id. at ¶ 35; see Docket No. 11-1 at 2). The IJ then moved to the submission of documents. (Id. at ¶ 35; see Docket No. 11-1 at 3-4). Petitioner's counsel objected to the submission on the Form I-213 because of its inaccuracies and as it was completed by another officer and not the arresting officer. (Id. at ¶ 35; see Docket No. 11-1 at 4-5). The IJ still accepted the Form I-213 as part of the record even though the IJ saw and acknowledged to what Petitioner's counsel was referring. (Id. at ¶ 35; see Docket No. 11-1 at 5).

Petitioner's counsel laid out all of Petitioner's positive evidence and qualities and informed the IJ that Petitioner's sponsor and fiancé could testify if asked to do so. (Id. at ¶ 36; see Docket No. 11-1 at 6). Counsel stated Petitioner's positive equities as follows: Petitioner has no criminal record; he has lived in the United States since he was about six years old; he received all his education in this country;

he has completed all his holy sacraments and is part of a church community; he has been in a relationship with a United Staters citizen who he plans on marrying; he has over twenty letters from community members; he has a stable residential history at a fixed residential address, and he has possible immigration relief consisting of Quilantan Entry, adjustment of status, and 42B. (Id. at ¶ 36; see Docket No. 11-1 at 6-7). Counsel also explained the circumstances of Petitioner's arrest. (Id. at ¶ 36; see Docket No. 11-1 at 7-8). Petitioner was present in the hearing, speaks English, and would have given testimony if asked to do so. (Id. at ¶ 36).

At the hearing, DHS's counsel raised issues about Petitioner's business/employment history and speculated that Petitioner's relationship with his fiancé was new. (Id. at ¶ 37; see Docket No. 11-1 at 8-12). The IJ asked Petitioner's counsel about Petitioner's asserted basis for Quilantan relief, as well as about Petitioner's fixed address, to which Petitioner's counsel responded. (Id. at ¶ 37; see Docket No. 11-1 at 10-12). Petitioner's counsel stated that Petitioner has been with his partner for about four years, that Petitioner's business was launched this year, and that Petitioner worked for another before then. (Id. at ¶ 37; see Docket No. 11-1 at 13). Rather than rendering an oral decision, the IJ concluded the hearing, as follows:

> I'm going to do this. Since there's a lot of documents that you presented, counsel, I would like to give them further review. [¶] I'm going to take this under advisement. I'll issue a decision later today in chambers. If possible, during the lunch hour. If not, it will be after hours. And whatever the Court's decision ends up being, I'll reserve appeal on behalf of both parties.

(Docket No. 11-1 at 12-13).

Subsequent to the hearing, the IJ issued the following written order:

> The [Petitioner] requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented,

> [Petitioner's] request for a change in custody status is hereby ordered: Denied, because [Petitioner] failed to meet his burden to establish that he is not a flight risk. Should [Petitioner] appeal the [c]ourt's custody redetermination decision to the Board of Immigration Appeals, this [c]ourt will provide a more fulsome memorandum to facilitate review of the appeal.

(Docket No. 6-1).

Petitioner is being detained at the Adelanto ICE Processing Center in Adelanto, California. (Petition at ¶¶ 2-3, 17, 26; see https://locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (internal quotation marks and brackets omitted). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

/ / /

/ / /

/ / /

/ / /

## IV.

## DISCUSSION

### A. The Court Exercises its Discretion to Waive Exhaustion.

As an initial matter, the Court considers Respondents' argument that Petitioner must exhaust his claims by appealing them to the Board of Immigration Appeals ("BIA") before raising them in this Court (see Docket No. 6 at 4-6).

The Immigration and Nationality Act contains an administrative exhaustion requirement. Puga v. Chertoff, 488 F.3d 812, 814-15 (9th Cir. 2007) (citing 8 U.S.C. § 1252(d)(1)). But "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted); Singh v. Holder, 638 F.3d 1196, 1203 n.3 (9th Cir. 2011) ("On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement."). "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" Puga, 488 F.3d at 815 (quoting Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)); see N.A. v. Warden, Adelanto Det. Facility, Case No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *6 (C.D. Cal. Feb. 20, 2026) ("Because exhaustion is not jurisdictional, courts have

discretion to waive a prudential requirement.") (internal quotation marks and citation omitted).

Assuming the Puga factors weigh in favor of an exhaustion requirement, the Court exercises its discretion to waive the exhaustion requirement because the first and third Laing factors apply. First, Petitioner will suffer irreparable injury through his continued detention after an allegedly constitutionally inadequate bond hearing while waiting for the BIA's decision. See Perez Velasquez v. Bondi, et al., Case No. 26-cv-01759-GPD-DDL, 2026 WL 1042479, at *4 (S.D. Cal. Apr. 16, 2026) (collecting cases). Second, the administrative remedies are inadequate and not efficacious. Even if the BIA reversed the bond determination, that would not be an adequate remedy for Petitioner's potential prolonged detention. See Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) ("[B]ecause of delays inherent in the administrative process, BIA review would result in the very harm that the bond hearing was designed to prevent: prolonged detention without due process during lengthy and backlogged removal proceedings.") (internal quotation marks and citation omitted). Accordingly, the court exercises its discretion to waive the exhaustion requirement.

**B. The IJ Abused his Discretion by Failing to Provide any Reasoned Opinion for Denying Bond.**

In the third claim of his Petition, Petitioner contends that the IJ's decision to deny bond and order Petitioner detained constituted a violation of due process under the Fifth Amendment because the IJ failed to provide any reasoned analysis to support his decision denying bond on the basis that Petitioner was a risk of flight. (Docket No. 1 at 19-20).

1. Legal Standard.

Courts review an immigration judge's dangerousness or flight risk determination under an abuse of discretion standard. See Martinez v. Clark, 124

F.4th 775 at 784 (9th Cir. 2024). ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion."). An immigration judge's dangerousness or flight risk determination is an abuse of discretion when it is "arbitrary, irrational, or contrary to law." Bonilla v. Lynch, 840 F.3d 575, 581 (9th Cir. 2016). "Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts [] have found due process violations where IJs abuse discretion in bond determinations." Soto Gimenez v. Hernandez, Case No. 2:26-cv-00966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases). "Under an abuse of discretion standard, [the court] cannot reweigh evidence," but instead only determines whether the IJ applied the correct legal standard. Martinez, 124 F.4th at 785.

"To determine whether an alien is a danger to the community or a risk of flight, an [Immigration Judge] weighs nine [non-exhaustive] factors under BIA precedent." Id. at 783 (citing In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). An immigration judge may consider any or all of the following:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

In re Guerra, 24 I. & N. Dec. at 40. "An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." Id. While immigration judges need not address every piece of evidence, they must consider and address the submitted evidence and issue a decision that fully explains their reasoning. Franco-Rosendo v. Gonzalez, 454 F.3d 965, 966 (9th Cir. 2006) (an immigration judge "abuses [his] discretion when [he] fails to consider and address in its entirety the evidence submitted by a petitioner and to issue a decision that fully explains the reasons for" the decision) (quotation marks and citation omitted). Although an immigration judge is not required to "discuss each piece of evidence submitted" in assessing a noncitizen's risk of danger or flight risk, an immigration judge's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[ ]" that undermines the assumption that the immigration judge considered the evidence and applied the correct standard. Martinez, 124 F.4th at 785. When there is an indication that the immigration judge failed to actually consider all of the evidence, the court will not credit the immigration judge's vague assertion. Perez Velazquez, 2026 WL 1042479, at *6 .

2. Bond Decision.

As noted above, the IJ denied Petitioner's request for bond in a written order which summarily stated that Petitioner had failed to meet his burden to establish that he was not a flight risk. The IJ's written decision provided no explanation, analysis or reasoning, and consisted only of a checked box and a single sentence stating that Petitioner had not met his burden of demonstrating that he was not a risk of flight. (See Docket No. 6-1 at 1). The transcript of Petitioner's September 24, 2026 bond hearing reflects that Petitioner was represented by counsel at the hearing, had numerous supporters present, and presented numerous exhibits in support of his

bond request. (Docket No. 11 at 2-3, 13; see Docket No. 1-2 at 29-181). The transcript reveals that the IJ inquired into many of the issues raised by Petitioner's counsel in support of his request to be released on bond, including that he had been brought to the United States as a child, had applied for DACA relief, that he had a basis to seek Quilantan relief, had no criminal history, had resided at a fixed address for a number of years, had a record of employment and had started his own business, and had a willing and viable sponsor. (Docket No. 11 at 5-7, 9-12). The transcript reflects that the IJ did not rule on Petitioner's request for bond at the hearing, but instead informed the parties that he was taking the matter under advisement and would issue a ruling later that day. (Id. at 12-13).

In order to determine whether the IJ abused his discretion, the Court must be able to assess how the IJ exercised his discretion. Here, however, the Court is unable to make that assessment because the IJ provided no analysis or reasoning for his decision to deny bond on the basis of flight risk, either orally at the hearing or in writing on the bond form.

In the context of immigration appeals, the Ninth Circuit has held that "the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions." Movsisian v. Ashcroft, 395 F.3d 1095, 1098 (9th Cir. 2005). This is because, without a reasoned explanation, a reviewing court cannot be sure that the BIA "heard, considered, and decided" the case based on appropriate considerations. Villanueva-Franco v. I.N.S., 802 F.2d 327, 330 (9th Cir. 1986). "In this same vein, many district courts have recently concluded that an immigration judge abuses [his] discretion when [he denies] release on bond without any explanation of [his] reasoning in doing so." Singh v. Warden, Golden State Annex Det. Facility, Case No. 1:26-cv-01973-DAD-CSK, 2026 WL 1328588, at *6 (E.D. Cal. May 13, 2026) (collecting cases); Guzman-Juarez v. Wamsley, Case No. 26-cv-01791-TMC, 2026 WL 1911506, at *4 (W.D. Wash. July 2, 2026); Benipal v. Rokosky, Case No. 26-

cv-01306 PHX RM (CDB), 2026 WL 1355010, at *8 (D. Ariz. Apr. 24, 2026), report and recommendation adopted, 2026 WL 1352061 (D. Ariz. May 14, 2026); Vasquez Lopez v. Hernandez, Case No. C26-0775 TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026).

The Court finds these decisions persuasive and concurs with their analysis since due process requires a sufficient record from which to determine whether an adjudicator has followed the law. The Court finds that the IJ abused his discretion by failing to provide a reasoned explanation for his decision denying Petitioner bond. While the transcript of the bond hearing indicates that the IJ was engaged and appeared to understand and consider the evidence that had been proffered by the parties, the Court must be able to review the record before it to "assess whether an IJ correctly applied the statutory standard to a given set of facts." Martinez, 124 F.4th at 783 (quoting Wilkinson v. Garland, 601 U.S. 209,221 (2024)); see also Movsisian, 395 F.3d at 1098 (when the agency "fails to provide specific and cogent reasons for its decision, we are left without a reasoned decision to review").

Here, the failure of the IJ to provide any reasoned analysis to support his decision denying bond based on Petitioner's risk of flight has deprived this Court of the ability to determine whether the IJ correctly applied the governing standard to the underlying facts. This was error on the part of the IJ and constitutes an abuse of discretion.

Accordingly, the Court finds that the IJ abused his discretion in finding that Petitioner is a flight risk that no amount of bond would be sufficient to offset. Therefore, Petitioner is entitled to habeas relief.[4]

/ / /

---

[4] Based on the Court conclusion that the IJ's determination constituted an abuse of discretion and violated Petitioner's right to due process, the Court need not address Petitioner's other claims (see Docket No. 1 at 17-31).

3. Remedy.

The remaining question is what remedy is appropriate. Petitioner specifically seeks immediate release from custody. (Docket No. 1 at 3, 31).

"Given that 'habeas corpus is, at its core, an equitable remedy,' . . . courts have 'broad discretion in conditioning a judgment granting habeas relief.'" Huaembukie v. Bondi, Case No. 8:26-cv-00512-MCS-KES, 2026 WL 879723, at *1 (C.D. Cal. Mar. 31, 2026) (citing Schlup v. Delo, 513 U.S. 298, 319 (1995), and Hilton v. Braunskill, 481 U.S. 770, 775 (1987)). "Upon determining that an [Immigration Judge] provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release . . . or ordered that Respondents provide petitioner with a new constitutionally adequate bond hearing." Perez Velasquez, 2026 WL 1042479, at *7 (collecting cases).

Here, Petitioner has been in custody since August 29, 2026, and he was not provided a custody redetermination hearing until almost one month after he was detained and only upon his request. Moreover, as the Court has determined, the IJ at the September 24, 2026 bond hearing abused his discretion and violated Petitioner's right to due process. Therefore, the Court finds that the appropriate remedy is release.

## V.

## ORDER

IT IS THEREFORE ORDERED that Judgment be entered: (a) Granting the Petition; (b) ordering Respondent to immediately release Petitioner Jonathan Gomez-Leyva (A# 219-849-912) from custody subject to the same conditions (if any) that he was subject to at the time he was arrested and detained; (c) ordering Respondents to return all property confiscated from Petitioner (if any) during his arrest and processing into detention; (d) enjoining Respondents and their officers,

agents, employees, attorneys and persons acting on their behalf in concert or in participation with it, from re-detaining Petitioner without complying with all applicable statutes and regulations, including the provision of written notice and a pre-deprivation hearing before a neutral arbiter at which Respondents bear the burden of proof by clear and convincing evidence; and (e) ordering Respondents to file a status report within two (2) business days of the date this Order to confirm that Petitioner has been released from custody, and that all property confiscated from Petitioner (if any) during his arrest and processing into detention has been returned to him.

DATED: November 13, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE